UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

THOMAS W. BOYDE, IV,

                          Plaintiff

-vs-

LIEUTENANT MIGNANO, et al.,

                          Defendants

_____

DECISION AND ORDER

08-CV-6242 CJS

      Thomas Boyde ("Plaintiff"), formerly a pre-trial detainee at the Orleans County Jail, alleges that Defendants violated his federal constitutional rights, in violation of 42 U.S.C. § 1983. Now before the Court is a summary judgment motion (Docket No. [#156]) by defendant Deputy French ("French"). The application is granted.

BACKGROUND

      Unless otherwise noted the following are the facts of the case viewed in the light most-favorable to Plaintiff, the non-moving party. At all relevant times, Plaintiff was a pre-trial detainee facing prosecution in Monroe County, New York, for insurance fraud. Plaintiff, though, had previously assisted in an internal affairs investigation against a Monroe County Sheriff's Deputy. Consequently, pursuant to an agreement between Plaintiff and Monroe County, Plaintiff was housed outside of Monroe County, in the Orleans County Jail.[1]

      At Orleans County Jail, Plaintiff was housed in a cell block with other inmates including Carl Turner ("Turner"). Some time prior to July 31, 2007, Turner was

---

[1] The agreement required that Plaintiff be housed outside of Monroe County, but did not specifically require that he be housed in Orleans County.

transported to Monroe County for a court appearance. On July 31, 2007, two Monroe County Sheriff's Deputies transported Turner back to the Orleans County Jail.[2] Upon his arrival at Orleans County Jail, Turner accused Plaintiff of being an informant in a federal drug investigation. Plaintiff denied the accusation and asked Turner how he came to believe that Plaintiff was an informant, and Turner responded that he had been told so by one of the Monroe County Deputies who had transported him. Turner described the deputy as a "stocky, bald white guy." Another inmate at the Orleans County Jail, named James Sanderson ("Sanderson"), overheard this conversation between Plaintiff and Turner. Shortly thereafter, Plaintiff wrote a letter to the Corrections Staff at Orleans County Jail, telling them that he was in danger because Turner was telling other inmates that he was a snitch. However, the jail staff did not move Plaintiff or otherwise take steps to protect him.

On or about August 30, 2007, Turner and Plaintiff fought, and Plaintiff sustained various physical injuries requiring stitches. According to Turner, the fight began when Plaintiff attacked him, after another inmate, Hector Lopez ("Lopez"), threw wet paper on Plaintiff while he was napping in his cell. According to Turner, Plaintiff came out of his cell and attacked him, either because he did not know who threw the wet paper or because he figured that Turner was the weakest man on the cell block. Turner's testimony on this point is supported by contemporaneous records

---

[2]This is Plaintiff's theory, with which French seems to agree, though he does not agree that he was one of those deputies. However, Turner testified that when he was transported by Monroe County Sheriff's deputies, it was generally when they were picking him up at the Orleans County Jail and taking him to the Monroe County Jail. See, Turner Dep. at pp. 25, 39 ("I think Orleans County picked me up. Usually that's how it worked."). Such testimony suggests that it would have been Orleans County personnel who brought Turner back to Orleans County from Monroe County on July 31, 2007, not Monroe County Personnel.

from the Orleans County Jail. Specifically, an incident report dated August 30, 2007, concerning the fight states, in pertinent part:

> I also asked Boyde what his involvement was with inmate Turner and he stated he struck Turner in the head then stated that he did [so] in self defense. Boyde went on to say that he felt that if he didn't strike out against Turner he would not live to see the morning. Boyde also stated 'The inmates in the block threw piss soaked toilet paper on me when I was sleeping.' I asked Boyde if he struck any inmates in the block and he now stated 'No but I was struck by several inmates in the block.' Boyde again stated 'I struck out in fear for my life.'

Docket No. [#28-2] at p. 10.

Immediately after the fight Plaintiff was removed from Orleans County Jail and taken to a medical facility. A short time later, Plaintiff was transferred to another jail by defendant French, a Monroe County Sheriff's Deputy. Because French apparently is a "stocky, bald white guy," Plaintiff assumed that he was the deputy who allegedly told Turner that he was a snitch. Plaintiff confronted French with the accusation, but French denied it and reported Plaintiff's accusation to his superior officer, Sergeant Mancini ("Mancini"). Mancini maintains that he investigated Plaintiff's accusation, and concluded that French was not one of the officers who transported Turner to the Orleans County Jail on July 31, 2007. Instead, Mancini concluded that the two transport deputies on July 31, 2007 were Corporal Daniel Mooney and Deputy Benjamin Breedlove.

On June 4, 2008, Plaintiff commenced this action, proceeding *pro se*. Plaintiff sued Monroe County, the Monroe County Sheriff and various Orleans County defendants. In pertinent part, the Complaint [#1] alleged that Monroe County and the

3

Monroe County Sheriff violated Plaintiff's constitutional rights by housing him in Orleans County when he did not have any charges pending against him in that county.[3] The Complaint [#1] did not allege any wrongdoing by any Monroe County Sheriff's Deputy.

On September 10, 2008, Plaintiff filed an Amended Complaint [#7], which similarly sued Monroe County and the Monroe County Sheriff, for housing him at the Orleans County Jail. *See*, Amended Complaint ¶ ¶ 33-35. The Amended Complaint [#7] likewise did not allege any wrongdoing by any Monroe County Sheriff's Deputy. Moreover, neither the Complaint [#1] nor the Amended Complaint [#7] alleged any facts to explain why Turner had attacked Plaintiff. Specifically, neither pleading alleged that Turner attacked Plaintiff because he had been told by someone that Plaintiff was an informant.

On October 7, 2008, the undersigned referred this action to the Honorable Jonathan W. Feldman, United States Magistrate Judge, for all non-dispositive pretrial matters.

During pretrial discovery, Plaintiff filed several motions [#29, 37, 40, 58] to compel discovery, in which he sought, *inter alia*, information concerning the identities

---

[3] At Plaintiff's deposition, he testified that he believes the assault on him at the Orleans County Jail was part of a plot to murder him, because he provided information about wrongdoing by a Monroe County Sheriff's deputy and an assistant Monroe County district attorney, both of whom allegedly patronized Plaintiff's wife's escort service. See, e.g., Pl. Dep. at pp. 12, 17, 19-25. More specifically, Plaintiff testified that "the internal affairs agreement came about because the deputy was at fault [and it was agreed] that I would never be housed at Monroe County Jail ever again." *Id*. at p. 19. Consequently, Plaintiff's contention in his Complaints that there was no reason for him to be housed outside of Monroe County Jail was false.

of Monroe County Sheriff's Deputies.[4]  On March 29, 2010, Magistrate Judge Feldman issued a Decision and Order [#77], granting, in pertinent part, Plaintiff's fourth motion to compel [#58] and directing the Monroe County Defendants to respond to Plaintiff's request for production of documents [#43] and interrogatories [#51]. Plaintiff's interrogatories included a request to identify, by name, badge number and photograph, the Monroe County Deputies who had transported Turner between July 1, 2007 and August 31, 2007. *See*, [#51] at no. 1. On May 6, 2010, Monroe County responded to Plaintiff's interrogatories, and in response to Plaintiff's aforementioned interrogatory no. 1, stated that Turner had been transported by six different deputies, whose names and badge numbers were listed. *See*, [#82] at p. 2. French was not one of the listed deputies. Monroe County also provided Plaintiff with Turner's "Inmate Move History." Plaintiff subsequently filed motions for sanctions, arguing that Monroe County had failed to make complete disclosures. *See*, [#79] & [#84].

On July 19, 2010, Magistrate Judge Feldman issued an Order [#90] granting Plaintiff's application for appointment of counsel. On July 23, 2010, Magistrate Judge Feldman denied Plaintiff's *pro se* motions for discovery sanctions without prejudice, with the understanding that Plaintiff's newly-appointed counsel could renew the motions if he felt that it was appropriate to do so.

---

[4] On June 30, 2008, Plaintiff filed a demand [#5] for discovery addressed to the Monroe County Sheriff's Department, seeking the names of deputy transport officers who had transported Turner between "May and August 2008." The demand did not explain why Plaintiff was seeking that information. Shortly thereafter, the Monroe County defendants turned over discovery that referenced Plaintiff's contention that a transport deputy had told Turner that Plaintiff was an informant. Accordingly, the Monroe County Attorney was aware of Plaintiff's theory on that point prior to him ever including it in a pleading.

5

Plaintiff maintains that French committed a constitutional violation against him on July 31, 2007,[5] which is the date that French allegedly told Turner that Plaintiff was an informant. Consequently, on July 31, 2010, the three-year statute of limitations governing Section 1983 claims against French expired. At that time, Plaintiff had not asserted any claim against French, either by name or as a John Doe defendant, though he clearly could have done so. Moreover, at the time the limitations period expired, neither of Plaintiff's complaints contained any allegation of wrongdoing by a Monroe County Sheriff's deputy, nor any allegation that Turner attacked Plaintiff because he believed Plaintiff was a snitch. At most, the pleadings indicate that Orleans County officials were aware that Plaintiff was in danger prior to the attack, for unspecified reasons.

On October 21, 2010, approximately three months after the limitations period expired, Plaintiff's recently-appointed counsel filed a motion [#97] for leave to file a Second Amended Complaint. The motion to amend indicated that Plaintiff intended to pursue claims against two unnamed Monroe County Sheriff's deputies who had told Turner that Plaintiff was an informant. In that regard, the motion stated that in the prior two complaints, Plaintiff had wrongly sued Monroe County and the Monroe County Sheriff.[6] The proposed Second Amended Complaint omitted Monroe County

---

[5] See, Pl. Memo of Law [#158] at p. 5 ("The limitations period ran on July 31, 2010.").

[6] Plaintiff's memo of law in support of the amendment asserted, though, that, "The substance of Boyde's claims remains the same. That is, as the result of false statements made by two Monroe County Sheriff's deputies to a fellow inmate at the Orleans County Jail, Carl Turner, . . . Boy was brutally attacked and injured on August 29, 2007." Memo [#97-1] at p. 1. The Court cannot agree with that statement, however, since neither of the two previous complaints asserted anything resembling such a claim. Accordingly, while Plaintiff may have been thinking about pursuing such a claim, it was not correct to

(continued...)

and the Monroe County Sheriff, and added "Does 1-2."

For reasons that are unclear, it appears that the Monroe County Defendants did not respond to or oppose the motion to amend. On January 14, 2011, Magistrate Judge Feldman granted Plaintiff's motion to file a Second Amended Complaint. On that point, it is noteworthy that in connection with the motion to amend, none of the parties raised issues before Magistrate Judge Feldman pertaining to the statute of limitations, which had expired in July 2010. Accordingly, Magistrate Judge Feldman did not make a ruling either way as to the timeliness of the amended claim against "Does 1-2."

During further discovery, Plaintiff attempted to learn the identity of the John Doe defendants. At deposition, Turner stated that he had been transported by French both before and after August 30, 2007. Turner further stated that some time after August 31, 2007, he told French, during a transport, that he had gotten into a fight with Plaintiff, and that French had responded with words to the effect that Plaintiff was "not popular" at the Monroe County Jail.[7] Turner denies, though, that French ever said that Plaintiff was an informant. Turner stated that *he subjectively* "read between the lines" and interpreted French's comment, about Plaintiff being "unpopular," as

---

[6](...continued)
assert that the substance of his "claim" remained the same, since his claim was what was contained in his pleadings.

[7]*See*, Turner Dep. at 86 ("Q. Did anyone from Monroe County Sheriff's Department ever say to you that Mr. Boyde was a snitch? A. I think they were talking about he was not popular. He was not popular in Monroe County Jail. I don't remember them saying that. I'm sure they could have, but I don't remember."); *see also, id.* at pp. 24-25, 129-131.

suggesting that Plaintiff was either an informant or a child molester/rapist.[8]  However, Turner denies that French ever stated that Plaintiff was an informer or snitch.  At times during the deposition, Turner's testimony regarding the timing of French's "unpopular" comment was equivocal as to whether it was made before or after Plaintiff was removed from the jail on or about August 30, 2007.  However, Turner's testimony was unequivocal that the subject conversation with French occurred in response to him telling French about the fight with Plaintiff.

Orleans County Jail inmate Joseph Sanderson testified at deposition that on or about July 31, 2007, he overheard Turner tell Plaintiff that a Monroe County Deputy had told him that Plaintiff was an informant in a federal drug investigation.  Moreover, documentary evidence indicates that in early August 2007, Plaintiff wrote a letter to officials at the Orleans County Jail, stating that Turner was claiming that he had been told by a Monroe County Deputy that Plaintiff was an informant.

Consequently, there is evidence that prior to August 31, 2007, Turner made such a statement to Plaintiff, though there is no admissible evidence that a deputy actually told Turner that Plaintiff was an informant.  That is, there is evidence that Turner made such an accusation, but no evidence supporting Turner's accusation.  However, assuming that a deputy in fact made such a statement to Turner, none of

---

[8]"Normally when guards are speaking to tell you things, you got to read between the lines. They're not going to come out and say it because its going to jeopardize them their jobs, what they have. So they'll say things and you got to try to catch the little key words and read between the lines of what they're saying.  And by [French] saying, 'He's not very popular amongst the people at Monroe County Jail,' just him saying 'people' and not saying 'guards' would lead me to believe  that [he was a snitch], because there's only two ways that you can be unpopular with other inmates, and that's if you molest a child or rape a woman, or you snitch." Turner Dep. pp. 87-88.  Of course, Turner's speculations on that point are not evidentiary proof in admissible form.  Moreover, the record suggests that if Plaintiff was not popular at the Monroe County Jail, it was because he had assisted in an investigation of a Monroe County Deputy, which is why he was not housed at Monroe County jail in the first place.

the aforementioned evidence indicates the identity of the deputy.  The only evidence of identity concerning French is Turner's testimony that French told him that Plaintiff was unpopular at the Monroe County Jail.

After obtaining the requested discovery, on January 16, 2012, Plaintiff, by his counsel, filed a motion [#141] for leave to file a Third Amended Complaint.  The proposed Third Amended Complaint listed French as a defendant for the first time in this action.  As part of that motion, Plaintiff indicated that the statute of limitations against French expired on July 31, 2010.  Plaintiff argued, though, that his proposed amendment to add French as a defendant would "relate back" to the original complaint.  On that point, Plaintiff argued that his failure to name French previously was a "mistake," since Plaintiff had previously "imputed" French's conduct to Monroe County and the Monroe County Sheriff.  Plaintiff claimed that relation back was therefore appropriate pursuant to *Soto v. Brooklyn Correctional Facility*, 80 F.3d 34 (2d Cir. 1996) ("*Soto*").  Plaintiff also argued that French had the required "notice" under Rule 15(c), because, as mentioned above, sometime after August 31, 2007 Plaintiff verbally accused French of telling Turner that Plaintiff was an informant.  Plaintiff did not argue that French had actual notice of this lawsuit.  However, Plaintiff maintained that French was put on constructive notice of this lawsuit, since Plaintiff had sued Monroe County and the Monroe County Sheriff.  In that regard, Plaintiff argued that either the County, or the Sheriff, or their attorney, *should have known* that French was the person whom Plaintiff was actually trying to sue, apparently based on Plaintiff's discovery demands.

9

French opposed Plaintiff's request to file a Third Amended Complaint. *See*, [#143]. French argued, in part, that the statute of limitations had expired, and that the proposed amendment would not relate back as against him pursuant to, *inter alia*, *Barrow v. Wethersfield Police Dept.*, 66 F.3d 466 (2d Cir. 1996), which ruled that a failure to identify a John Doe defendant is not a "mistake" within the meaning of Rule 15(c). *See*, [#143-2] at pp. 4-9. However, on March 9, 2012, Magistrate Judge Feldman granted Plaintiff's motion to file a Third Amended Complaint. In his summary Order [#146] granting that application, Magistrate Judge Feldman indicated that he was granting the motion to amend for "reasons [that he] set forth on the record" following oral argument of the motion. The undersigned has listened to Magistrate Judge Feldman's untranscribed audio recording of that oral argument. In it, Magistrate Judge Feldman indicated, in pertinent part, that he believed that amendment was appropriate, and that the amendment would relate back as against French, pursuant to *Soto*, because Plaintiff's decision to sue Monroe County and the Monroe County Sheriff rather than French was a "classic mistake of law," since Plaintiff had attempted to assert respondeat superior claims against Monroe County and the Monroe County Sheriff arising out of French's conduct. Magistrate Judge Feldman cautioned, though, that he was making that ruling without prejudice to French bringing a later dispositive motion on the question of relation back. In that regard, Magistrate Judge Feldman noted, for example, that further discovery might be needed to determine whether French had actually received the required notice of this lawsuit under Rule 15(c). In any event, the Third Amended Complaint [#148] is now the

operative complaint in this action.

On June 29, 2012, French filed the subject motion to dismiss, or in the alternative, for summary judgment [#156]. French contends that the claim against him should be dismissed for the following reasons: 1) it is time-barred and the amendment against him does not relate back; and 2) Plaintiff cannot prove that French told Turner that Plaintiff was an informant. As to this latter point, French contends that Plaintiff's theory is based on hearsay and speculation since both French and Turner deny that French made such a statement.

On April 17, 2013, counsel for the parties appeared before the undersigned for oral argument. At the close of oral argument, the Court granted counsel leave to file supplemental letter briefs, which were filed on April 24, 2013.

## DISCUSSION

*Rule 56*

Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.).

The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369

U.S. 654, 655 (1962). Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993).

*Statute of Limitations*

At the outset, the Court will consider French's arguments pertaining to the statute of limitations. On this point, Plaintiff suggests that the Court should not consider such arguments, since they are the same arguments that French raised unsuccessfully when he opposed Plaintiff's motion to file a Third Amended Complaints. *See*, Pl. Memo of Law [#158] at p. 2, 4. Plaintiff contends that Magistrate Judge Feldman rejected those arguments, and Plaintiff should therefore not be allowed "a second bite at the apple." *See, id*. at p. 2 ("[T]hat decision was correct on the law and should not be reconsidered or overruled now."). Of course, the Court ordinarily does not re-visit rulings by a Magistrate Judge to which the losing party did not file objections. Here, however, it is clear that Magistrate Judge Feldman granted Plaintiff's motion to file a Third Amended Complaint without prejudice to French renewing his Rule 15(c) arguments before the undersigned, following discovery. Magistrate Judge Feldman reiterated that point several times. Accordingly, the Court will reconsider the relation-back issue *de novo*.

The applicable rule of law is FRCP 15(c)(1), which provides that an amendment will relate back when

> (A) the law that provides the applicable statute of limitations allows relation back;

> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>>
>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

FRCP 15(c)(1) (West 2013). Since the Third Amended Complaint was filed to add a party, not a claim, the amendment will not relate back unless it falls under either FRCP 15(c)(1)(A) or 15(c)(1)(C).

<u>*The amendment does not relate back under 15(c)(1)(A)*</u>

In the instant case, Rule 15(c)(1)(A) would allow the amendment to relate back if such amendment would relate back under the law of New York State, which is the state law that provides the applicable three-year statute of limitations. On that point,

> [t]he New York Court of Appeals has held that an amendment will generally relate back if (1) the new claim arises out of the same conduct, transaction, or occurrence set forth in the original complaint, (2) the new defendant is "united in interest" with the existing defendants such that he would have notice of the lawsuit and will not be prejudiced in his defense, and (3) the failure to name the proper party previously was the result of an excusable mistake. *Buran v. Coupal*, 87 N.Y.2d 173, 178, 638 N.Y.S.2d 405, 408, 661 N.E.2d 978 (1995).

13

*Dooley v. Columbia Presbyterian Med. Ctr.*, No. 06 Civ. 5644(JCF), 2009 WL 129941 at *3, n. 8 (S.D.N.Y. Jan. 16, 2009). Here, even assuming *arguendo* that the amendment satisfies the first and third of those requirements, it does not satisfy the second, since French is not "united in interest" with Monroe County or the Monroe County Sheriff. *See, Trisvan v. County of Monroe*, 26 A.D.3d 875, 809 N.Y.S.2d 369 (4th Dept. 2006) (Where plaintiff originally sued Monroe County and Monroe County Sheriff, her subsequent amendment, after the expiration of the limitations period, adding a Monroe County Sheriff's deputy as a defendant, did not relate back: "Supreme Court properly denied the motion on the ground that plaintiff failed to establish that the deputies are united in interest with the County and the Sheriff, and thus plaintiff is not entitled to the benefit of the relation back doctrine) (collecting cases explaining why, as a matter of law, deputies are not united in interest with either the county or the sheriff whom they serve). Accordingly, the amendment does not relate back under New York State law.[9]

*The amendment does not relate back under 15(c)(1)(C)*

As set forth above, under the Federal Rules of Civil Procedure, the subject amendment would relate back if "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in

---

[9]The Second Amended Complaint named "Does 1-2," and New York State law, CPLR §§ 203, 306-b and 1024, allows John Doe pleadings to toll the statute of limitations under certain circumstances. *See, e.g., Huitzil v. Delta Intern. Machinery Corp.*, 09 Civ. 00451(JGK), 2011 WL 3251508 at *3 (S.D.N.Y. Jul. 26, 2011) ("[CPLR § 1024] authorizes the filing of complaints against "John Doe" defendants. The filing of a "John Doe" complaint can toll the applicable statute of limitations, provided the plaintiff shows that he made genuine efforts to ascertain the defendants' identities prior to the running of the statute of limitations.") (citation and internal quotation marks omitted). However, those provisions are not applicable here, since the limitations period had already expired when Plaintiff filed the Second Amended Complaint.

the original pleading," and if, within 120 days of the filing of the action, French both "received such notice *of the action* that [he] will not be prejudiced in defending on the merits" and "knew or should have known that the action would have been brought against [him], but for a mistake concerning the proper party's identity." (emphasis added). Here, the Court need not decide whether the first of those requirements is satisfied, since Plaintiff cannot show that the second and third requirements are satisfied. In that regard, the Complaint [#1] in this action was filed on June 4, 2008. On September 15, 2008, the Court granted Plaintiff's application to proceed *in forma pauperis* and directed the Clerk of the Court to cause the U.S. Marshal to serve the defendants.[10] "Generally, where a litigant applies for *in forma pauperis* [("IFP")] status, which confers the automatic right to service of process by U.S. Marshals, the 120–day time limit for service of process pursuant to Fed. R. Civ. Proc. 4(m) is tolled during the pendency of that motion." *Bastedo v. North Rose-Wolcott Cent. Sch. Dist.*, No. 10–CV–6162L, 2011 WL 2110812 at *1 (W.D.N.Y. May 26, 2011) (citation omitted).

Accordingly 120 days from the date of the Order granting Plaintiff's IFP motion was January 13, 2009. As of that date, the operative pleading was the Amended Complaint [#7] which did not contain any allegations against a Monroe County Sheriff's deputy, or any *respondeat superior* claims against Monroe County or the

---

[10] The Marshal served Monroe County and the Monroe County Sheriff on October 27, 2008 and November 7, 2008, respectively.

Monroe County Sheriff.[11]  Plaintiff has not shown that French had any notice of "the action" on or before January 13, 2009, and even if he had such notice, it would not have been apparent to him from the Amended Complaint that Plaintiff was attempting to assert a claim against him.

It is true that in June 2008, Plaintiff filed a "motion for discovery," seeking the names of Monroe County Sheriff's deputies who had transported Turner.  However, that motion did not explain why Plaintiff was seeking the information, and in any event the Sheriff's department had determined, long before the commencement of the action, that French was correct in asserting that he was not the deputy who had transported Turner on July 31, 2007.[12]  Furthermore, the notice required under Rule 15(c)(1)(C) is notice of "the action," meaning the claims that are actually pleaded or that have attempted to be pleaded, not the claims that the plaintiff might possibly plead at some later time. Even assuming *arguendo* that French was bound by the County Attorney's knowledge, it is the content of the pleading, not discovery demands, that provides the required notice under Rule 15(c). *See, Bank Brussels Lambert v. Chase Manhattan Bank, N.A.*, 1999 WL 672302 at *2 (S.D.N.Y. Aug. 27,

---

[11]In opposition to French's motion, Plaintiff argues that in his first two complaints, he "mistakenly sued Monroe County and Sheriff O'Flynn *and attributed Deputy French's conduct to those entities.*" Pl. Memo [#158] at 8.  That statement is clearly incorrect, since as already discussed those complaints do not even arguably attempt to assert vicarious liability against the County or the Sheriff for anyone else's conduct.

[12]Plaintiff argues that French should be deemed to have notice of this action because in or about September 2007, Plaintiff verbally accused French of having told Turner on July 31, 2007 that Plaintiff was a snitch.  However, the Court disagrees since Plaintiff had no basis to make such allegation, except for the fact that French was, like many men, stocky and bald, and French denied the accusation.  Also on that point, Plaintiff reportedly alleged that the deputy who allegedly told Turner that he was a snitch went by the name "Taylor," and there is no indication that French was known by that name. *See*, Mancini Report, Monroe County Rule 26 Disclosures [#27].  More importantly, even if French had learned, over a year later, that Plaintiff had commenced a lawsuit arising out of his injury, a perusal of the Complaint undoubtedly would have assured French that Plaintiff was not attempting to assert any claim against him.

1999) (Rejecting Plaintiff's argument that defendant was put on notice within meaning of Rule 15(c) by discovery demands). Accordingly, at the relevant time under Rule 15(c)(1)(C), neither Monroe County, the Sheriff, the County Attorney[13] nor French would have had reason to think that French would be sued in this action but for a mistake concerning the proper party's identity.

For all of the foregoing reasons, the Court finds that the amended claim against French did not relate back to the filing of this action, and is therefore untimely and must be dismissed.

### *The Merits of Plaintiff's Claim Against French*

Even assuming that the claim against French was timely, the Court would nevertheless find that French is entitled to summary judgment on the merits. Plaintiff contends that French acted outrageously by telling Turner that Plaintiff was a snitch, knowing that such an accusation would put Plaintiff in danger. Such facts, if proven, could support a Fourteenth Amendment claim.[14] However, Plaintiff implicitly concedes that there is no admissible evidence to prove his theory that French

---

[13] *See, Green v. New York City Dept. of Corr.*, No. 93 Civ. 3360 SAS, 1997 WL 96548 at *3 (S.D.N.Y. Mar. 5, 1997) ("Under the doctrine of constructive notice the court can impute knowledge of a lawsuit to a new defendant government official through his attorney, when the attorney also represented the officials originally sued, so long as there is some showing that the attorney knew [or should have known] that the additional defendants would be added to the existing suit.") (citations omitted). Here, the record does not show that the Monroe County Attorney had such notice during the relevant period.

[14] On that point, "courts have recognized that being labeled a 'snitch' in the prison environment can indeed pose a threat to an inmate's health and safety in violation of the Eighth Amendment, [and] in general prison officials will [be held responsible if the inmate is injured.]" *Abney v. Jopp*, 655 F.Supp.2d 231, 233 (W.D.N.Y. 2009) (citation and internal quotation marks omitted). Moreover, "[c]onstitutional claims by pretrial detainees must instead be analyzed under the Due Process Clause of the Fourteenth Amendment, which, in practice, involves the same test as that used to analyze claims by convicted inmates under the Eighth Amendment." *Mayo v. County of Albany*, 357 Fed.Appx. 339, 341, 2009 WL 4854022 at *1 (2d Cir. Dec. 17, 2009). On the other hand, the Court does not believe that merely stating that an inmate was "unpopular" would support such a claim.

specifically told Turner that Plaintiff was an informant, since, in his papers, he states merely that Turner "*was led to believe* by Deputy French that Plaintiff was, in fact, a 'snitch.'" Pl. Memo of Law [#158] at p. 5 (emphasis added). On that point, Plaintiff contends, though without any supporting evidence, that French "led Turner to believe" that Plaintiff was a snitch, after Turner specifically asked French whether Plaintiff was a snitch. However, according to Turner, he merely told French that he had been in a fight with Plaintiff, and French responded with words "to the effect that" Plaintiff was "not popular" at the Monroe County Jail.

  It is clear from all of the foregoing that Plaintiff lacks sufficient evidentiary proof in admissible form to support his claim. Plaintiff has no firsthand knowledge of anything that French may have told Turner, and no admissible evidence that French told Turner that Plaintiff was a snitch.[15] Plaintiff also has no evidentiary proof in admissible form that French was the deputy who transported Turner on July 31, 2007, since Turner never told Plaintiff the deputy's name. At most, Plaintiff suspects that it was French, because Turner claimed to have spoken to a "bald, stocky white deputy." Plaintiff nevertheless contends that based on the entire record, and particularly Turner's deposition, a reasonable jury could find that French told Turner that Plaintiff was a snitch. However, the Court disagrees, and finds that any such conclusion by a jury would be based on speculation, and not on reasonable inferences

---

[15]Plaintiff argues that Turner testified that he asked French whether Plaintiff was a snitch. *See*, Pl. Supplemental Submission [#163] at p. 1, citing to Turner Deposition at pp. 42 and 86-87. However, Turner stated that he did not recall asking French whether Plaintiff was a snitch. *See*, Turner Dep. at pp. 42-43, 86-87.

drawn from the admissible evidence.[16]

## CONCLUSION

French's summary judgment motion [#156] is granted. The Clerk is directed to enter judgment for French and to terminate him as a party to this action.

SO ORDERED.

Dated:      Rochester, New York
              May 8, 2013

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge

---

[16] Plaintiff's theory is that the deputy who transported Turner on July 31, 2007 told Turner that Plaintiff was an informant in a federal drug investigation in order to have Plaintiff assassinated. *See* footnote 3 above. Plaintiff has no evidence that French transported Turner on that date. Plaintiff has evidence that on some undetermined date, French told Turner that Plaintiff was "unpopular" at the Monroe County jail, which was true because Plaintiff had cooperated against a deputy who worked at the jail, and did not want to be housed there. Plaintiff also has evidence that Turner and other inmates suspected that Plaintiff was a snitch because he was housed in Orleans County even though he did not have charges pending against him in that county. Plaintiff even has evidence that Turner may have asked some jail employee or deputy whether Plaintiff was a snitch. However, the Court does not believe that these disparate facts, or the entire record, support a *reasonable* inference that French told Turner on July 31, 2007 that Plaintiff was a snitch in a federal drug investigation.